HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JERRE DANIELS-HALL and DAVID HAMBLEN, individually and on behalf of all others similarly situated, | Case No. C 07-5339RBL |
| Plaintiffs, | ORDER OF DISMISSAL |
| v. | |
| NATIONAL EDUCATION ASSOCIATION, et al., | |
| Defendants. | |

**1.    Summary.**

This Matter is before the court on Motions to Dismiss brought by the following defendants: (1) National Education Association ("NEA") and NEA Member Benefits Corporation and related individual Defendants [Dkt. # 53]; (2) Security Benefit Corporation and Security Benefit Group, Inc. [Dkt. # 54]; (3) Security Benefit Life Insurance Company, and Security Distributors, Inc. [Dkt. # 56]; and (4) Nationwide Life Insurance Company [Dkt # 58]. The Motions are brought under Fed. R. Civ. P. 12(b)(1) and (6).

Plaintiffs represent a putative class of teachers who, pursuant to salary reduction agreements, obtained §403(b) annuity contracts paid for by their public school district employers, sold by the defendant insurance companies, and endorsed and promoted by defendant NEA. The annuity contracts are called

"NEA Valuebuilder §403(b) Annuities." Plaintiffs claim that the annuity contracts are employee pension benefit plans within the meaning of ERISA, and that they were established or maintained by the NEA, an employee organization. They claim that the insurance company Defendants improperly paid, and the NEA Defendants improperly received, millions of dollars in undisclosed "commissions" or "revenue sharing" in exchange for endorsing and encouraging teachers to select the NEA Valuebuilder §403(b) Annuities from among the menu of retirement investment options provided to them by their school district employers. Plaintiffs argue that ERISA applies to the NEA Valuebuilder §403(b) Annuities because they were "established or maintained" by the NEA, even if they were (as required for tax purposes) actually purchased by their public school employers.

The Defendants' Motions are based on their argument[1] that the NEA Valuebuilder §403(b) Annuities are not "employee pension benefit plans" within the meaning of ERISA, and even if they are such "plans," they are necessarily government plans, and are expressly excluded from ERISA. Thus, they argue, this court does not have subject matter jurisdiction over the Plaintiffs' claims, and the Plaintiffs have failed to state claims upon which relief can be granted.

The issue is whether an employee organization such as the NEA can establish or maintain a §403(b) annuity plan within the meaning of ERISA. The parties have thoroughly briefed this issue and engaged in a lengthy oral argument. Because the court concludes that the NEA legally cannot, and therefore did not, establish or maintain the NEA Valuebuilder §403(b) Annuities, the court does not have jurisdiction and must GRANT the Defendants' Motions and Dismiss the Plaintiffs' claims.

The court will not refer the issues presented to the Department of Labor, and the Plaintiffs' Motion to Stay these proceedings to do so is DENIED.

**2.    Standards Under Fed. R. Civ. P. 12(b).**

A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual allegations in

---

[1] Each Defendant also makes additional arguments in support of their respective motions to dismiss. Each claims that the plaintiffs have not established that the defendants are "fiduciaries" as required for liability under ERISA. Security Benefit Corp and Security Benefit Group, Inc., move separately for dismissal on the ground that the Plaintiffs have made no substantive allegations or claims against them. [Dkt. #54] Defendant Nationwide, which sold its "book of business" to Defendant SBC more than 6 years ago, also argues separately that whether or not the Plaintiffs' claims against it are otherwise viable, they are barred by the applicable limitations period. [Dkt. #58]. Because of the court's resolution of the jurisdictional issue, these additional arguments are not addressed.

ORDER
Page - 2

the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant).  When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).  A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  Therefore, plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

      Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Review is limited to the content of the complaint [and properly incorporated documents], and all allegations of material fact must be taken as true, and construed in the light most favorable to the non-moving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). Under *Bell Atlantic Corp. v. Twombly*, a litigant cannot simply recite the elements of a cause of action to avoid dismissal under this Rule.  He must instead "provide the grounds of his entitlement to relief, which requires more than labels and conclusions." 127 S.Ct. 1955, 1964-65 (2007).  The litigant must plead a claim that moves "across the line from conceivable to plausible." *Id*. at 1974.

    **3.**    **Discussion.**

        **A.**    **ERISA's Statutory Framework.**

      The Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq*., ("ERISA") was designed to protect working men and women from abuses in the administration and investment of private retirement plan and employee welfare plans. *See, for example, Hansen v. Continental Insurance Co.*, 940

F.2d 971, 975-76 (5th Cir. 1991).  ERISA broadly covers two sorts of private "plans," employee welfare benefit plans and employee pension benefit plans.  United States District Courts have jurisdiction over claims arising under plans governed by ERISA.  The NEA Valuebuilder §403(b) Annuities at issue here, if they are within the coverage of ERISA at all, are employee pension benefit plans.

Under ERISA, a program designed to provide retirement income is an "employee pension benefit plan" if it is established or maintained by an employer, an employee organization, or both:

> (2)(A) [T]he terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter *established or maintained by an employer or by an employee organization*, *or by both*, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program--
>
> (i) provides retirement income to employees, or
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond[.]

29 U.S.C.A. § 1002(2)(A) (emphasis added).

ERISA generally applies to employee pension benefit plans established and maintained by employers or employee organizations engaged in interstate commerce:

> (a) Except as provided in subsection (b) or (c) of this section . . .
> this subchapter shall apply to any employee benefit plan if it is *established or maintained*--
>
> (1) *by any employer* engaged in commerce or in any industry or activity affecting commerce; or
> (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
> (3) by both.

29 U.S.C. §1003(a) (emphasis added).

There are, however, significant exceptions to ERISA's otherwise broad coverage.  ERISA specifically does not apply to government plans[2].  29 U.S.C. §1003(b).  These are defined as "plan[s] *established or maintained* for its employees *by* the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."  29

---

[2] In enacting ERISA, Congress clearly stated its intention to allow state and local governments to "make their own determination of the best method to protect the pension rights of municipal and state employees. These are questions of state and local sovereignty and the Federal Government should not interfere." *See Feinstein v. Lewis*, 477 F. Supp. 1256, 1261 (D.C.N.Y. 1979).  In exempting governmental plans from ERISA's reach, Congress was "concerned more with the governmental nature of public employees than with the details of how a plan was established or maintained." *Id.* at 1262 (internal citations omitted).

U.S.C. §1002(32) (emphasis added.).  ERISA was instead designed to protect employees of private employers from abuses in pension plans.

Additionally, the Department of Labor has, pursuant to the authority granted it under ERISA, established regulations permitting employers (and in some cases, employee organizations) to engage in limited activities relating to providing information and access about available benefit plans, without being deemed to have "established or maintained" the plan, and thus triggering the application of ERISA to it. There are separate "safe harbor" regulations for employee welfare benefit plans and employee pension benefit plans.

The safe harbor regulation for pension benefit plans using tax sheltered annuities (like the §403(b) annuities at issue here) is found at 29 CFR 2510.3-2(f).  By its terms, this safe harbor regulation permits employers (but not employee organizations) to engage in limited promotional activity without being deemed to have "established or maintained" an ERISA pension benefit plan[3].

---

[3]The relevant safe harbor regulation, 29 CFR 2510.3-2(f), specifically provides:

(f)Tax sheltered annuities. For the purpose of title I of the Act and this chapter, a program for the purchase of an annuity contract or the establishment of a custodial account described [the Code], pursuant to salary reduction agreements or agreements to forego an increase in salary, which meets the

ORDER
Page - 5

Significantly, the parallel "safe harbor" provision for employee *welfare* benefit plans (as defined in 29 U.S.C.A. § 1002(1)) is different. That provision permits employers AND employee organizations to

---

requirements of 26 CFR 1.403(b)-1(b)(3) ***shall not be "established or maintained by an employer"*** as that phrase is used in the definition of the terms "employee pension benefit plan" and "pension plan" if

(1) Participation is completely voluntary for employees;

(2) All rights under the annuity contract or custodial account are enforceable solely by the employee, by a beneficiary of such employee, or by any authorized representative of such employee or beneficiary;

(3) The sole involvement of the employer, other than pursuant to paragraph (f)(2) of this section, is limited to any of the following:

    (i) Permitting annuity contractors (which term shall include any agent or broker who offers annuity contracts or who makes available custodial accounts within the meaning of Section 403(b)(7) of the Code) to publicize their products to employees,

    (ii) Requesting information concerning proposed funding media, products or annuity contractors;

    (iii) Summarizing or otherwise compiling the information provided with respect to the proposed funding media or products which are made available, or the annuity contractors whose services are provided, in order to facilitate review and analysis by the employees;

    (iv) Collecting annuity or custodial account considerations as required by salary reduction agreements or by agreements to forego salary increases, remitting such considerations to annuity contractors and maintaining records of such considerations;

    (v) Holding in the employer's name one or more group annuity contracts covering its employees;

\* \* \*

    (vii) After February 6, 1978, limiting the funding media or products available to employees, or the annuity contractors who may approach employees, to a number and selection which is designed to afford employees a reasonable choice in light of all relevant circumstances. Relevant circumstances may include, but would not necessarily be limited to, the following types of factors:

        (A) The number of employees affected,
        (B) The number of contractors who have indicated interest in approaching employees,
        (C) The variety of available products,
        (D) The terms of the available arrangements,
        (E) The administrative burdens and costs to the employer, and
        (F) The possible interference with employee performance resulting from direct solicitation by contractors; and

(4) The employer receives no direct or indirect consideration or compensation in cash or otherwise other than reasonable compensation to cover expenses properly and actually incurred by such employer in the performance of the employer's duties pursuant to the salary reduction agreements or agreements to forego salary increases described in this paragraph (f) of this section.

ORDER
Page - 6

1 avoid "establishing or maintaining" welfare benefit plans under ERISA if their involvement is limited.
2 *Compare* 29 CFR 2510.3-1(j).

3 Plaintiffs argue that their school district employers' conduct with respect to the NEA Valuebuilder
4 §403(b) Annuities was limited, and because it was within the parameters of the safe harbor provision, the
5 school districts did not "establish or maintain" the plans.  According to the Plaintiffs, this conclusion has
6 two important implications: (1) the NEA Valuebuilder §403(b) Annuities are not "government plans;" and
7 (2) the plans must have been established or maintained by some other entity, namely, the NEA.

8 In support of this second point, Plaintiffs focus on the activities of the employee organization
9 (NEA) and point out that its involvement in the design, selection, promotion and administration of the plans
10 was significantly greater than that of the employer school districts.  It argues that comparing the school
11 districts' "safe harbor" conduct with the NEA's greatly increased activity is "instructive" in determining
12 whether either entity "established or maintained" the annuity plans.  Plaintiffs claim that the NEA's conduct
13 amounts to "establishing or maintaining" a plan within the meaning of ERISA.

14 The Defendants argue that the safe harbor provision is relevant only to non-governmental
15 employers (such as §501(c)(3) organizations) which can purchase §403(b) annuities for their employees.
16 Governmental employers, such as the school districts here, do not need the protection of the safe harbor
17 provision because even if they do engage in conduct beyond the safe harbor, the plan they may be deemed
18 to have established or maintained is nevertheless a government plan, and it remains exempt from ERISA's
19 application.

20 They also argue, more persuasively, that the omission of any reference to "employee organizations"
21 in the safe harbor regulation is simply recognition of the fact that while these entities can generally establish
22 or maintain employee pension plans, s*ee* 29 U.S.C. §1002(2)(A), they cannot do so with respect to the
23 specific sort of plan – §403(b) annuities – which are the subject of the regulation and which are at issue
24 here.

25 Thus, Defendants argue, whether or not the school districts established or maintained the plans, the
26 NEA could not have done so, and ERISA does not apply in either event.

27 **B.    The Tax Law Governing §403(b) Annuities.**

28 The Defendants' primary argument is that the NEA Valuebuilder §403(b) Annuities at issue here
cannot, as a matter of law, be "established or maintained" by anyone other than the plaintiffs' employers –

local, public school districts. This argument is based on the language of the IRS Code section establishing that, under certain circumstances, such annuities are not taxable as income to the employee. This Code provision, 26 U.S.C. §403(b), provides that one of the major conditions of non-taxability is that the annuity must be purchased by the employer:

> **(b) Taxability of beneficiary under annuity purchased by section 501(c)(3) organization or public school.--**
>
> **(1) General rule**. --If--
>
>     (A) an annuity contract is *purchased*–
>
> \* \* \*
>
>     (ii) for an employee (other than an employee described in clause (i)), who performs services for an educational organization described in section 170(b)(1)(A)(ii), ***by an employer*** which is a State, a political subdivision of a State, or an agency or instrumentality of any one or more of the foregoing[.]
>
> \* \* \*
>
> then contributions and other additions by such employer for such annuity contract shall be excluded from the gross income of the employee for the taxable year[.]

26 U.S.C. §403(b) (emphasis added).

Plaintiffs argue that the tax treatment of a given investment vehicle is not determinative of the vehicle's status as a plan under ERISA, and point out that the parties can create a "plan" subject to ERISA even if they did not intend to do so (and even if they intended not to). *See*, for example, *Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114. 1119 (9th Cir. 1994).

### C. The NEA Valuebuilder §403(b) Annuities' status as a "plan" under ERISA depends on whether they were established or maintained by the NEA.

Defendants argue that the NEA Valuebuilder §403(b) Annuities are not a "plan" within the meaning of ERISA. Instead, they claim, the annuities are merely a "product" which is part of a menu of investment options made individually available to the Plaintiff employees by their school district employers. This argument centers on the claim that annuity contracts standing alone are not necessarily ERISA plans. Defendants cite the United States Department of Labor's Field Assistance Bulletin No. 2007-02, which states somewhat unhelpfully that "compliance with the new §403(b) regulations will not *necessarily* cause a [tax sheltered annuity] program to become covered by Title 1 of ERISA." (Emphasis added.) This does not state or imply that such annuity programs necessarily are not plans within the meaning of ERISA; it simply leaves open the possibility that whatever they are, they might not be covered by ERISA.

Defendants also cite *Otto v. Variable Annuity Life Insurance Co.*, 814 F.2d 1127, 1135 (7th Cir. 1987) for the proposition that "certain §403(b) annuities are not pension plans as defined by the Department of Labor." [*See* Dkt. # 58 at 8,9]  This citation is also not entirely helpful; the case holds with little discussion that the school district employer there did not "establish or maintain" the fixed annuity plan, because "its minimal ministerial activities" allowed it to fall within the "safe harbor" provision of 29 CFR §2510.3-2(f).  The Seventh Circuit did not discuss at any length whether the annuities were a offered pursuant to an organized scheme.  And, as will be seen below, *Otto* did it address whether the annuities at issue could be established or maintained by another entity.

Plaintiffs respond, correctly, that the existence of a plan is fundamentally a question of fact, and urge the court to apply the "functional" approach outlined in cases of the *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982).  They cite a relatively recent Ninth Circuit case, *Winterrowd*, for the proposition that a plan exists if the benefits are offered pursuant to an organized scheme, and the terms of the offer are discernable to a reasonable person:

> A mere "decision to extend benefits," therefore, does not establish a plan within the meaning of ERISA. . . . Rather, it is axiomatic that a mere offer to extend benefits cannot properly be considered a "plan" unless two basic requirements are met. First, the benefits must be offered pursuant to an organized scheme. Second, the terms of the offer, in the context of the relevant surrounding circumstances, must enable a reasonable person to discern the basic elements of the benefits scheme.

*Winterrowd v. Am. Gen. Annuity Ins.Co.*, 321 F.3d 933, 939 (9th Cir. 2003) *(citing Donovan, supra)*.

Both parties focus primarily on the issue of whether the annuities either "by their express terms or as a result of surrounding circumstances, constitute a plan, fund, or program" which "provides retirement income to employees." *See* 29 U.S.C.A. § 1002(2)(A).

The court is satisfied that the NEA Valuebuilder §403(b) Annuities are such plans, either expressly or from the perspective[4] of a reasonable investor.  Their purpose is clearly to provide retirement income, and notwithstanding the fact that individual employees purchase individual annuity contracts, the annuities promoted by the NEA and offered uniformly to the school district employees are a "program" designed for that purpose, and would be seen as such by a reasonable employee.  *See Winterrowd,* 321 F.3d at 939*; Donovan* 688 F.2d at 1372.

---

[4]This conclusion is bolstered (if not mandated in the Rule 12 context) by the NEA marketing materials cited by the Plaintiffs.  These materials unequivocally describe (and tout) the annuities as a "retirement savings and investment Program" [See Plaintiffs' Response, Dkt. # 68 at 11-12, and links referenced therein.]

However, there is an additional requirement in the ERISA definition of an employee pension benefit plan which remains in question. Even an organized scheme or program designed to provide retirement income is an ERISA "plan" *only if* it is "established or maintained by an employer, an employee organization, or both." *See* 29 U.S.C.A. § 1002(2)(A). Accordingly, determination of the issue of whether these annuities are a "plan" depends on whether they were "established or maintained" by an employer, an employee organization, or both.

The determination of this issue ultimately depends on the determination of the other primary issue raised by the Defendants' Motions – whether the NEA Valuebuilder §403(b) Annuities were (or legally could have been) established or maintained by the NEA.

### D. Because the the NEA Valuebuilder §403(b) Annuities Were Not Established or Maintained by the School District Employers, Any "Plan" Was Not a Government Plan.

Defendants argue that even if the NEA Valuebuilder §403(b) Annuities are a "plan" under ERISA, they are necessarily a government plan, and are nevertheless exempt from ERISA.

The Plaintiffs assert that the NEA Valuebuilder §403(b) Annuities at issue here were not established or maintained by the Plaintiffs' school district employers. Plaintiffs argue that this means both that the plans are not government plans, and that they were established or maintained by the NEA. The Defendants respond that even if an ERISA plan exists, it is necessarily a government plan excluded from ERISA under 29 U.S.C. §1003(b). They also argue that the NEA cannot establish or maintain a §403(b) annuity plan.

The centerpiece of the Plaintiffs' argument on both points is the safe harbor regulation discussed above. As the Seventh Circuit explained in *Otto*, the Department of Labor has determined that a program for the purchase of an annuity

> *shall not be deemed to be established or maintained by an employer* within the meaning of ERISA when (among other factors not relevant here) the sole involvement of the employer is to permit annuity contractors to offer their products to employees and collect and remit payment and maintain records of such payments.

*Otto*, 814 F.2d at 1135, *citing* 29 CFR §2510.3-2(f) (emphasis added). The Plaintiffs argue that this is all the school district employers did in this case. They do so perhaps because it is true, but also because it is clear that a plan established or maintained by their government employers is beyond the reach of ERISA.

The dispute over the import of the safe harbor regulation here is instead on what it does not say,

1 and what, if any, impact it has on the Plaintiffs' core allegation that the NEA Valuebuilder §403(b)
2 Annuities were established and maintained by the NEA – an employee organization which is not the
3 plaintiffs' governmental employer, and which did not purchase the annuities.

4 Defendants argue the safe harbor provision does not apply to governmental employers at all,
5 because such employers do not need its protection. Instead, they argue, the provision permits other entities
6 (such as non-governmental §503(c) entities) to provide annuity contractors access to their employees, and
7 to purchase §403(b) annuities for their employees, without being deemed to have "established or
8 maintained" an ERISA plan. Government employers, however, do not need to avail themselves of this
9 provision, because even if they engage in conduct beyond that described in the safe harbor regulation, the
10 "plan" they may have "established or maintained" is a government plan and is exempt from ERISA in any
11 event.

12 This position has some logical appeal. The Plaintiffs cite to at least four opinions, however, which
13 do discuss the application of the "safe harbor" provisions in the context of plans provided by governmental
14 employers. All but one of these do so with respect to employee welfare benefit plans, which involve a
15 discussion of the "other" safe harbor regulation, the one that is available to employee organizations. For
16 that reason they are not directly on point, but they do support plaintiffs' claim that the safe harbor
17 regulation is part of the calculus, even where the plan at issue may be a government plan.

18 The first of these cases is *Pierson v. Continental Insurance Co.*, 2000 U.S. Dist. Lexis 21380 (D.C.
19 Cal. 2000). *Pierson* involved a public school teacher plaintiff and her claims under an employee welfare
20 benefit plan endorsed by her union, the UTLA. Plaintiff sued for benefits under her insurance policy in
21 state court. Defendants removed the case, citing ERISA, and she sought remand, arguing that ERISA did
22 not apply.

23 The court began its analysis of the issue with the application of the safe harbor regulation related to
24 employee welfare benefit plans, 29 CFR §2510.3-1(j), which can protect employee organizations from the
25 application of ERISA to employee welfare benefit plans. It found that the UTLA had not satisfied[5] each

---

[5]UTLA not only allowed access to the insurance companies, it promoted the policies by authorizing the use of a "UTLA-approved" logo. Thus, the court concluded, "a reasonable member of the union would understand that a benefit approved by the organization was one that had been investigated by it had favorably impressed the leadership." *Pierson*, 2000 U.S. Dist. Lexis 21380 at *31-32. If the safe harbor provision at issue in this case more closely paralleled the one at issue in *Pierson*, this fact would support the Plaintiffs' claims.

ORDER
Page - 11

prong of the safe harbor regulation, primarily because it had "endorsed" the insurance policies. *Pierson*, 2000 U.S. Dist. Lexis 21380 at *31-32, 40. The court therefore concluded that "the fact that the UTLA plan does not fall within the safe harbor conclusively determines that it is an ERISA plan." *Pierson*, 2000 U.S. Dist. Lexis 21380 at *41. However, the court continued, "this does not end the inquiry. [E]ven a plan established or maintained by the UTLA would be exempt from ERISA if it were a governmental plan." *Pierson*, 2000 U.S. Dist. Lexis 21380 at *42.

The court determined whether the safe harbor applied before determining whether the plan was a government one, undermining the Defendants' claim that the safe harbor is not relevant in the context of a governmental plan. Indeed, the court rejected the argument[6] (made by the plaintiff in that case) that "a union plan not mandated by a collective bargaining agreement qualifies for the governmental plan exception." *Pierson*, 2000 U.S. Dist. Lexis 21380 at *44.

*Silvera v. Mutual Life Ins. Co. of N.Y.*, 884 F.2d 423 (9th Cir. 1989) similarly involved the application of ERISA to an employee welfare benefit plan. The plaintiff, a city employee, sued the insurer, MONY, in state court. MONY removed the case to federal court, arguing that ERISA applied, and that it pre-empted plaintiff's state law claims. Plaintiff argued that the government plan was exempt from ERISA, and sought remand. MONY argued that it, and not the city, had established and maintained the plan, and that as a result the government plan exception did not apply, and ERISA did. The Ninth Circuit rejected this argument by establishing that the city did not fall within the safe harbor, and that it did therefore "establish or maintain" the plan at issue:

> [A] straightforward application of 29 CFR §2510.3-1(j) to the facts of this case forces the conclusion that City did in fact "establish or maintain" an employee welfare benefit plan and, since City is a political subdivision of a state, that plan qualified as a governmental plan under 29 U.S.C. §1002(32) and was therefore exempt from ERISA coverage pursuant to 29 U.S.C. §1003(b)(1).

*Silvera*, 884 F.2d at 426. Implicit in this holding is recognition of the potential that an employee welfare benefit plan covering public employees could be established or maintained by someone other than the governmental employer, and that ERISA could apply to it.

---

[6] There is ample authority holding that, with respect to a employee welfare benefit plans, an employee organization can "establish or maintain" an ERISA plan which is nevertheless exempt as a government plan, so long as the plan is established pursuant to a collective bargaining agreement. *See* Department of Labor Opinion Letter No. 99-15A*; Feinstein v. Lewis*, 477 F. Supp. 1256, 1260-62 (D.C.N.Y. 1979)*; Pierson*, 2000 U.S. Dist. Lexis 21380 at *42-43. *Cf. Pierson*, 2000 U.S. Dist. Lexis 21380 at *42.

*Hanson v. United Life Insurance Company*, 170 F. Supp.2d 966 (D.C. Cal. 2001), addressed whether a welfare benefit plan administered by a public employee organization ("LACEA") was a plan, and if so, whether it was a government plan. That case, once again, involved a plaintiff's state law claims against an insurer for benefits under a group life insurance plan for public employees. The Defendant argued that the claims were preempted by ERISA.

The District Court found that the LACEA program was a welfare benefit plan under ERISA, and that LACEA had "established or maintained" the plan because it had not limited its involvement to the extent required for it to take advantage of the safe harbor regulation applicable to such plans. It also held that the plan was not a government plan:

> [T]he fact that Mr. Hanson was an employee of the City of Los Angeles is insufficient to make the LACEA life insurance program a government plan. The City must actually have "established or maintained" the plan for this exception to apply. It is undisputed that the City engaged in no activities that could be considering establishment or maintenance of the plan: the City provided no funds to the LACEA; has never had a seat on the LACEA board; has never exercised any authority over the LACEA; and has never possessed any control over the benefits provided to the members. . . . Furthermore, it is undisputed that the LACEA is not a governmental entity: it has no access to public funds and it performs no traditional government functions. . . . Accordingly, the Court finds that the LACEA life insurance plan is not a governmental plan exempted from ERISA coverage.

*Hanson*, 170 F.Supp.2d at 973.   Accordingly, the court held that the plan was subject to ERISA, and the plaintiff's state law claims were preempted. 170 F. Supp.2d at 974.

The final case supporting the plaintiff's claim that the safe harbor is relevant in the governmental employee context is *Otto,* discussed above. The case presents the closest analogy to the factual and procedural history of this case, as it is the only one addressing a §403(b) annuity.   Unfortunately, however, it is not squarely on point.

The plaintiff in *Otto* was a public school district employee who sued the insurance company which sold her a §403(b) annuity. As MONY argued in *Silvera*, the plaintiff argued that the insurance company (and not her employer, the school district) established or maintained the annuities. Without addressing the governmental plan exemption[7], Seventh Circuit cited the safe harbor regulation at issue here and

---

[7] The Seventh Circuit dismissed as "meritless" Plaintiff's argument based on the inconsistency of §403(b)'s requirement that an employer "purchase" the annuity, and the safe harbor's determination that the employer nevertheless did not "establish or maintain" the annuity program. *See Otto*, 814 F.2d at 1135. This issue is discussed below.

determined that the school district employer had engaged in only minimal, ministerial activities. Thus, it concluded, the school district had not established or maintained the plan at issue, and affirmed the district court's dismissal[8] of the plaintiff's ERISA claims. 814 F.2d at 1135. Implicit in its holding is the unremarkable conclusion that an annuity plan "established or maintained" by an insurance company is beyond the reach of ERISA. The opinion did not address the potential involvement of an employee organization in establishing or maintaining the plan.

While the parties agree that *Otto* leaves unsaid much that could be helpful here, it too supports Plaintiffs' claim that the safe harbor regulation is relevant, even where the plan may ultimately be a governmental one. For this reason, the court will consider the application of the safe harbor to the school districts' activities in this case.

By all accounts the school district employers did not engage in the sort of conduct that would fall outside the safe harbor. Under a "straightforward application" of 29 CFR §2510.3-2(f), they are deemed not to have "established or maintained" the §403(b) annuity plan(s) at issue here. The NEA Valuebuilder §403(b) Annuities are therefore not exempt from ERISA as government plans[9], if they are in fact plans at all.

### E. The NEA could not legally establish or maintain the NEA Valuebuilder §403(b) Annuities.

The resolution of the Defendants' Motions therefore comes down to the legal viability of Plaintiffs' core allegation – that the NEA Valuebuilder §403(b) Annuities were established or maintained by their employee organization, the NEA. Defendants' most persuasive, and ultimately dispositive, argument is that the NEA was and is legally incapable of establishing or maintaining a §403(b) annuity.

Plaintiffs emphasize that an employee organization can generally establish or maintain an ERISA

---

[8]The underlying District Court Order also focused on the safe harbor regulation and the fact that the employer did not "establish or maintain" the plan. Indeed, it specifically declined to apply the governmental plan exemption: [T]he ERISA claim is dismissed *not* because Otto's employer is a governmental subdivision, but because the annuity plan is not established or maintained by the employer (whether it be governmental or non-governmental)." *Otto*, 611 F.Supp. 83, 87 (D.C. Ill. 1985) (emphasis in original).

[9]It should be noted that the government plan exemption applies if the governmental employer *either* establishes *or* maintains the plan. 29 U.S.C. §1002(32). Thus, if the governmental employer establishes a plan and an employee organization maintains it, it is nevertheless a government plan exempt from ERISA.

ORDER
Page - 14

employee pension benefit plan, regardless of the fact that the safe harbor provision applicable to §403(b) plans is not available to such organizations. They also suggest that if the NEA's conduct has a detrimental impact on the plans' non-taxability under 26 U.S.C. §403(b), there might be other tax benefits available to the Plaintiffs, or that that would be an element of their damages claim against the Defendants.

As an initial matter, the court is unwilling to conclude that the NEA Valuebuilder §403(b) Annuities are not in fact 26 U.S.C. §403(b) retirement vehicles, despite the efforts of all involved to ensure that they were. The NEA's involvement in the design and promotion of these annuity contracts, and their receipt of "kickbacks" for doing so, may have consequences, but one of them is not that the plans are now taxable. Instead, the court will focus on the NEA's legal ability to establish or maintain such plans under ERISA.

Defendants emphasize that the safe harbor regulation applies only to employers, and not to employee organizations. They argue that this is so because employee organizations cannot establish or maintain §403(b) annuity plans at all, so it is not necessary to provide them a "safe harbor" suggesting that they can engage in limited conduct without being deemed to have established or maintained a plan, thus triggering ERISA's application.

The Defendants' argument is supported by a number of authorities, beginning with the language of the tax code section itself. 26 U.S.C. §403(b) provides that one of the major conditions of non-taxability is that the annuity must be *purchased by the employer*. The Treasury Department regulations confirm (somewhat inartfully) that a §403(b) plan is "the plan of the employer under which the section 403(b) contracts for its employers are maintained." I.R.C. §1.403(b)-2(b)(16)(ii).

Perhaps most telling is the safe harbor regulation relied upon heavily by the Plaintiffs. 29 CFR §2510.3-2(f) does not mention employee organizations, while the parallel safe harbor for employee welfare benefit plans does permit those entities to avoid being deemed to have established or maintained an ERISA plan. The Defendants argue that the omission is due to the fact that employee organizations are not legally capable of establishing or maintaining such plans in any event – there would be no purpose in suggesting that they might avail themselves of the safe harbor in order to avoid ERISA's application to their "plans." The court agrees that the omission was intentional, and no other explanation for it has been suggested.

The Plaintiffs use the safe harbor to demonstrate the sorts of limited activities that do not arise to the level of "establishing or maintaining" a §403(b) annuity plan, and have sufficiently alleged that the NEA's conduct greatly exceeded the level permitted of employers under the safe harbor. However, that

ORDER
Page - 15

does not address or overcome the conclusion that employee organizations are not legally capable of establishing or maintaining §403(b) annuity plans in the first place.

The Defendants' argument that only an employer, and not an employee organization, can legally establish or maintain a §403(b) plan collides at some point with the safe harbor provision, which specifically provides that an employer shall *not* be deemed to have established or maintained a plan if its involvement is minimal and ministerial.

The Internal Revenue Service's recent Field Assistance Bulletin, No. 2007-02, reiterates that even if the employer may subsequently avail itself of the safe harbor (and thus preclude ERISA's application), TSAs can only be established or maintained by employers. It does not mention or suggest that such plans could be established or maintained by an employee organization:

> These TSA programs, if *established or maintained by an employer* engaged in commerce or in any industry or activity affecting commerce, generally are "pension plans" within the meaning of section 3(2) of ERISA and covered by Title I pursuant to section 4(a) of ERISA.The terms "establish" or "maintain" are not defined in ERISA, and uncertainty as to the application of ERISA to TSA programs funded entirely with employee contributions prompted the Department of Labor in 1979 to issue a "safe harbor" regulation at 29 C.F.R. § 2510.3-2(f). . . . The safe harbor at § 2510.3-2(f) states that a program for the purchase of annuity contracts or custodial accounts in accordance with provisions set forth in section 403(b) of the Code and funded solely through salary reduction agreements or agreements to forego an increase in salary, *are not "established or maintained" by an employer* under section 3(2) of the Act, and, therefore, are not employee pension benefit plans subject to Title I, provided that certain factors are present[.]

(Emphasis added).

Plaintiffs' argument focuses not on the NEA's legal ability to establish or maintain the NEA Valuebuilder §403(b) Annuities, but on the quantity and quality of the activities the NEA undertook to design, endorse, and monitor the annuities. The court is convinced that if the NEA could legally establish or maintain a plan, the Plaintiffs have met their burden of demonstrating that it did so as a factual matter. But the court is also convinced that employee organizations simply cannot, as a matter of law, establish or maintain §403(b) annuity plans.

Because the §403(b) Annuities were not established or maintained by the Plaintiffs' employers or their employee organization, they are not "plans" under ERISA. 29 U.S.C.A. § 1002(2)(A). This court therefore does not have subject matter jurisdiction over the Plaintiffs' claim arising out of those annuities.

**F.    The court will not refer the issues raised to the Department of Labor under the**

ORDER
Page - 16

**primary jurisdiction doctrine.**

This case presents a novel legal question – whether an employee organization can establish or maintain a §403(b) employee pension benefit plan within the meaning of ERISA, where the annuities are necessarily purchased by the employees' governmental employer, and where that employer is simultaneously deemed not to have established or maintained the plan. No authority squarely addresses this issue, and each side can find some legal and logical support from the applicable statues and regulations, and the holdings of cases and DOL opinions addressing related, but distinct, factual situations. Nevertheless, it is the court's view that the safe harbor's omission of employee organizations logically reflects the legal fact that only employers (and not employee organizations) can establish or maintain §403(b) tax sheltered annuity plans. This conclusion is supported by the language of 26 U.S.C. §403(b) and the safe harbor regulation applicable to §403(b) annuities, and by comparing that provision to the parallel but different safe harbor provision applicable to employee welfare benefit plans.

Defendants are correct that in all of the authority cited and discussed by the parties, none holds or suggests that employee organizations can establish or maintain §403(b) tax sheltered annuity plans. And that is the issue in this case – not "did the NEA do so," but "could it legally have done so." The answer to that question is "no."

The court does not believe that referring this issue to the Department of Labor would change that answer, and declines to do so under the primary jurisdiction doctrine. Plaintiffs' Motion on this point [Dkt. #82 ] is therefore DENIED.

The Defendants' Motion to Dismiss [Dkt. #s 53, 54, 56, and 58] are GRANTED. The Plaintiffs' claims are DISMISSED.

IT IS SO ORDERED.

Dated this 23rd day of May, 2008.

                                  /s/ Ronald B. Leighton
                                  RONALD B. LEIGHTON
                                  UNITED STATES DISTRICT JUDGE